UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MARLENE CAVAGNUOLO, as the
Executrix of the Estate of
JOSEPH T. CAVAGNUOLO,

          Plaintiff,

      -against-                          No. 1:23-cv-03369

XAVIER BECERRA, in his official
capacity as SECRETARY OF THE
UNITED STATES DEPARTMENT OF
HEALTH AND HUMAN SERVICES,

          Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# Complaint

Plaintiff Marlene Cavagnuolo, as the Executrix of the Estate of Joseph T. Cavagnuolo (the "Estate"), by her undersigned counsel, alleges as follows:

### Nature of the Action

1. The Medicare prescription-drug benefit was meant to give enrollees better care and greater financial security. For years, many Medicare beneficiaries—relying increasingly on prescription drugs—tried to cobble together coverage for drugs through an unwieldy and often inadequate combination of programs. Sometimes people with Medicare could afford to pay for their prescription medicines only by forgoing other basic needs. To prevent such dire choices, the Medicare prescription-drug benefit program (Part D) was enacted 20 years ago, in the Medicare Prescription Drug Improvement and Modernization Act of 2003 ("MMA"). Yet the Part D program still leaves many enrollees without coverage for prescriptions they need.

2. Among those in this situation are people like Plaintiff's decedent, the late Joseph T. Cavagnuolo, whose doctors prescribe medically necessary medications for "off-label" uses.

3. "Off-label" uses exist because drugmakers seek Food and Drug Administration ("FDA") approval only for specific uses of their products, and drugmakers conduct trials to test their drugs' safety and effectiveness in patients with specific conditions. If the FDA approves a drug, then the drugmaker must sell the drug with a label that lists only its FDA-approved uses. Any other use of that drug is referred to as "off-label."

4. Off-label uses are very common, accounting for up to one third of prescriptions, depending on the patient population and the condition being treated. The fact that a use is off-label *does not* imply that the use is either illegal or contraindicated.

5. Off-label prescribing simply reflects the fact that the FDA regulates drugs, not the practice of medicine. Indeed the FDA cannot regulate the practice of medicine.

6. Therefore a physician is legally free to prescribe a drug for a use other than the use that the FDA approved, so long as the use has a scientific rationale and is based on evidence, and certain records are kept.

7. Regulations issued in 2006 by the then–Secretary of Health and Human Services, however, would bar Part D coverage of off-label prescriptions unless the prescribed use is listed in privately published compendia that summarize certain clinical studies and peer-reviewed medical literature. If a drug's prescribed use is not listed in those compendia, then a Part D plan cannot cover the drug—even if research published in peer-reviewed medical journals shows that the drug is effective for the prescribed use, and even if the prescribing physician views the drug as medically necessary for the patient.

8. This exclusion from Medicare Part D coverage of off-label uses that are not mentioned in the private compendia hurts the most vulnerable people with Medicare, including people who have unusual conditions or whose diseases are rarely studied. The exclusion of these off-label prescriptions also conflicts with standard medical practice and sound policy. Indeed, without Part D coverage of off-label prescriptions, people face greater suffering. And Medicare as a whole often bears higher costs, because if people do not receive the medicines that they need, then they need more drastic care, such as emergency hospitalizations.

9. Plaintiff Marlene Cavagnuolo brings this action as the Executrix of the Estate of Joseph T. Cavagnuolo. Mr. Cavagnuolo taught fifth grade for 41 years. He was also a survivor of lung cancer. His disease progressed despite treatment with lines of standard chemotherapy and with immunotherapy. So Mr. Cavagnuolo seemed to have limited therapeutic options.

10. Then Mr. Cavagnuolo's physicians learned that his cancer expressed a particular gene mutation that made him appropriate, in their medical judgment, for treatment with the drug olaparib (or lynparza). Olaparib, which inhibits the protein PARP, has been approved by the FDA to treat certain other cancers, including ovarian, breast, fallopian-tube, and prostate.

11. Mr. Cavagnuolo requested coverage, but his Part D plan denied it; and when he requested reconsideration, the plan denied coverage again. On review, Maximus denied coverage. On further appeal, an ALJ agreed, reasoning that the prescription was "not for an FDA-approved or 'medically accepted indication' listed within Part D approved compendia."

12. The cancer eventually proved fatal. Mr. Cavagnuolo died in March 2021. His widow, Marlene Cavagnuolo, is his Executrix and substituted for him during administrative proceedings before the Medicare Appeals Council ("MAC"). Those proceedings were quite

protracted: they included two remands back to the ALJ level. Indeed, this case epitomizes the sad reality that because the Medicare appeals process is complex and has many layers, enrollees often pass away before they receive final administrative decisions that can be appealed to courts.

13. In September 2023, the MAC finally decided the merits. Denying coverage, the MAC emphasized that "our determination in this case is not based on the medical necessity of the medication . . . . We acknowledge the appellant's contentions that the drug at issue was effective to treating the enrollee's condition, and do not question its efficacy in this case."

14. Nevertheless, the MAC denied coverage, taking the view that although Part D covers olaparib when it is prescribed for many *other* cancers, Part D does not cover olaparib when it is prescribed for *lung* cancer.

15. Marlene Cavagnuolo now brings this action to compel the Secretary of Health and Human Services to fulfill his statutory duty to ensure that the Estate receives Part D coverage of a prescription that was medically necessary to her late husband's fight against lung cancer. Among other remedies, Mrs. Cavagnuolo seeks a declaration that the Secretary's reading of the Medicare statute, to create a compendia requirement that bars coverage of medically necessary off-label prescriptions, is unauthorized and unlawful.

**Jurisdiction and Venue**

16. This Court has jurisdiction because this case arises under a federal statute–the Medicare Part D provisions of the Social Security Act ("SSA").

17. The Court also has jurisdiction because this case is against the Secretary of the Department of Health and Human Services, in his official capacity.

18.     Furthermore, this Court has jurisdiction of this action pursuant to 42 U.S.C. § 1395w-104(h), which incorporates 42 U.S.C. § 405(g).  Under these provisions, the amount in controversy here—more than $20,000—far exceeds any potentially applicable threshold for judicial review.  *See* Medicare Program; Medicare Appeals; Adjustment to the Amount in Controversy Threshold Amounts for Calendar Year 2023, 87 Fed. Reg. 59437 at 59438 (Sept. 30, 2022) (setting 2023 amount-in-controversy requirement at $1,850 for judicial review).

19.     This Court also has jurisdiction of this action under 28 U.S.C. § 1361, which permits this Court to hear Plaintiff's claim that the Estate is entitled to mandamus relief because the Secretary has violated a non-discretionary mandate.

20.     Venue in this District is proper because the enrollee, who passed away in 2021, does not now reside in any judicial district.  42 CFR 423.2136(b)(2).

**The Parties**

21.     Plaintiff's decedent, the late Joseph T. Cavagnuolo, was a resident of Connecticut and was treated for lung cancer by physicians affiliated with the Yale University School of Medicine.  Even with that excellent care, though, his disease proved fatal.  Mr. Cavagnuolo passed away on March 21, 2021, while his Part D claim was still in administrative proceedings.

22.     Therefore the Plaintiff here is his widow, Marlene Cavagnuolo, who in 2021 was appointed by a Connecticut court to be Executrix of her late husband's Estate.

23.     Defendant Xavier Becerra (the "Secretary") is sued in his official capacity as the Secretary of the United States Department of Health and Human Services ("HHS").  The Secretary has responsibility for the policies and conduct of HHS.

**Facts**

**Mr. Cavagnuolo, His Lung Cancer, and His Olaparib Prescription**

24. Mr. Cavagnuolo was a life-long resident of Connecticut. He taught elementary school there for 41 years.

25. In 2018, Mr. Cavagnuolo was diagnosed with stage IV non-small–cell lung cancer. The disease progressed despite two lines of chemotherapy, and Mr. Cavagnuolo was considered inappropriate for endocrine therapy.

26. On February 10, 2020, the Department of Pathology at the Yale School of Medicine conducted a targeted cancer-gene panel (oncomine assay), using a specimen of tumor from one of Mr. Cavagnuolo's lymph nodes. Importantly, this assay detected a somatic variant in the tumor specimen. The tumor showed presence of a gene named BRCA2 with protein variant K1374Ter. The surgical pathology report stated that the "predicted effects" of this variant were "damaging; loss of tumor suppressor function." The report further stated that the "nonsense variant identified in this tumor leads to protein truncation" which in turn was "expected to abolish BRCA2 function." This was medically suboptimal because BRCA2 is a tumor-suppressing protein; BRCA2 maintains genome stability and repairs DNA.

27. Based on the pathology report, Mr. Cavagnuolo's oncologist, Neal Fischbach, MD, an Assistant Professor of Clinical Medicine at the Yale Cancer Center, submitted a prior-authorization request for olaparib (Lynparza tablets). Dr. Fischbach made clear that the authorization requested was not for ovarian, fallopian tube, or breast cancer, but rather was for lung cancer.

28. The initial, negative coverage determination was made on March 3, 2020. Redetermination was requested and the decision was again negative.

29. The reason for denying coverage was that olaparib is not FDA-approved for lung cancer and this use was not "listed in any of the clinical resources approved by" HHS for use in evaluating coverage. As the Case Narrative Form put it, "There was no literature found to support the use of Lynparza (olaparib) for the indicated diagnosis."

30. Dr. Fischbach, however, had submitted a letter supporting coverage. According to Dr. Fischbach, Mr. Cavagnuolo's case "ha[d] been reviewed by our Yale Molecular Medicine Tumor Board and the BRCA2 mutation is felt to be actionable (ie likely to be driving tumor growth)." Dr. Fischbach further wrote that it was the view of not only himself, but also two review boards at Yale, that olaparib was the "most appropriate therapy" for Mr. Cavagnuolo:

> It is the impression of our Thoracic Oncology Tumor Board, our Molecular Medicine Tumor Board and myself that olaparib (or another PARP inhibitor) is the most appropriate therapy for Mr. Cavagnuolo and his chance of response to any other agent/agents is unfortunately limited.

31. Mr. Cavagnuolo's pharmacist, Hillery Gibbons, PharmD, also had electronically signed a "chemotherapy note" stating that "Patient has a significant BRCA2 mutation, therefore a PARP inhibitor would have a good chance of benefiting him."

**The ALJ's Decision Denying Coverage**

32. Mr. Cavagnuolo appealed the plan's denial of coverage to Maximus (at the time, the Independent Review Entity) and then to the Office of Medicare Hearings and Appeals. His appeal was heard by Administrative Law Judge Richard Horowitz, based in Cincinnati, Ohio. The ALJ held a hearing in June 2020 and issued a decision on July 7, 2020.

33. In his decision, the ALJ addressed Mr. Cavagnuolo's statutory argument by referring to Plan provisions and then to regulations. The ALJ rejected Mr. Cavagnuolo's position largely by reference to administrative materials, not to any specific provision of the Social Security Act:

> Under the Medicare statute and regulations, Part D plans cannot be required to cover or pay for drugs that are not prescribed for medically accepted indications. The Act, the implementing regulations, and manual instructions clearly and unambiguously limit the definition of a medically accepted indication to any use for a covered outpatient drug which is approved under the Federal Food, Drug, and Cosmetic Act, or the use of which is supported by one or more citations included or approved for inclusion in any of the compendia described in subsection (g)(1)(B)(i) of the Act. Similarly, the regulations require that a "Part D drug" must be prescribed for a medically accepted indication. 42 C.F.R. § 423.100. This requirement may not be disregarded.
>
> . . . . [W]hile the drug olaparib (lynparza)'s mechanism of treatment is related to [Mr. Cavagnuolo's] gene mutation, the denial of coverage at the lower levels was related to the diagnosis not being in the compendia. In the instant case, the undersigned finds the Enrollee has failed to establish that the medication at issue was prescribed for an FDA-approved or "medically accepted indication" listed within Part D approved compendia.

**Protracted Proceedings Before the MAC**

34. Mr. Cavagnuolo appealed further, to the MAC (Medicare Appeals Council) in Washington, DC. Incredibly, the MAC has issued a total of *three* decisions in this matter.

35. First, in December 2020, the MAC remanded the matter back to ALJ Horowitz because the administrative record before the MAC was not complete:

> The Council cannot consider the enrollee's request for review at this time because we do not have a complete record. According to the ALJ Exhibit List, the administrative record consists of five exhibits. However, the record before us only includes four exhibits. A copy of Exh. 5 (Evidence Received after the ALJ Hearing), which consists of 93 pages, is missing from the record. Additionally, the record does not include a copy of the American Hospital Formulary Service Drug Information or the DRUGDEX compendia, specifically referenced and relied upon by the ALJ in the decision, or any other compendia relied upon by the ALJ in making his coverage determination (including any of the cancer-specific compendia, such as the National Comprehensive Cancer Network (NCCN) Drugs and Biologics compendium). See Decision at 3. Without a complete

> record, we are unable to review the appellant's request for review. *See* 42 C.F.R. §§ 423.2042(a)(1)-(2), 423.2108(a).
>
> Accordingly, we hereby vacate the ALJ's decision and remand this case so that the Office of Medicare Hearings and Appeals can assign the case to an ALJ for appropriate action. *Id.* § 423.2126. The ALJ shall reconstruct the record or develop a new record . . . .

36.     But before a second hearing could be held at the ALJ level, Mr. Cavagnuolo passed away. His counsel informed ALJ Horowitz, and informed the ALJ's office that Mrs. Cavagnuolo nonetheless was prepared to go forward with the hearing as the nominated Executrix of her husband's Estate. That candor was rewarded with the cancellation of the ALJ hearing and an order of dismissal on the supposed ground that "[t]he enrollee's surviving spouse or estate has no remaining financial interest in the case."

37.     That dismissal was flat wrong—indeed it was contrary to evidence given at the first hearing before the same ALJ, at which both Mr. Cavagnuolo and Mrs. Cavagnuolo had testified that they had already paid more than $20,000 out of pocket.

38.     In June 2021, Mrs. Cavagnuolo, acting as Executrix, appealed again to the MAC. In December 2021, the MAC remanded again to the ALJ, holding that "we find that the ALJ erred in dismissing the request for hearing." The ALJ held another hearing, and issued another denial in November 2022. Mrs. Cavagnuolo appealed again to the MAC in January 2023.

39.     In September 2023, the MAC finally issued a decision on the merits. As the ALJ had done twice, the MAC denied coverage based on its understanding of the relevant regulations promulgated by HHS. (The MAC's decision on the merits is attached hereto as Exhibit A.)

40.     In denying coverage, the MAC acknowledged that the Southern District of New York has held that the Medicare Part D program does not have any compendia requirement. *See Layzer v. Leavitt*, 770 F. Supp. 2d 579 (S.D.N.Y. 2011) (attached as Exhibit B, with CA2 docket).

**Count One**
(Medicare Prescription Drug Improvement and Modernization Act,
42 U.S.C. § 1395w-101 *et seq*.)
**The Secretary Has Failed To Ensure Prescription-Drug
Coverage for a Beneficiary Statutorily Entitled to Such Coverage**

41. Mrs. Cavagnuolo incorporates the allegations of paragraphs 1 through 40 here.

42. Under the MMA, every eligible person is entitled to prescription-drug coverage under a Part D plan. The Secretary has the statutory duty to ensure that each eligible participant in Part D receives access to "covered Part D drugs."

43. The Secretary has failed to ensure that Mr. Cavagnuolo, who was an eligible and enrolled Part D plan participant, received coverage for a covered Part D drug.

44. As a result, Mr. Cavagnuolo was denied his statutory right to prescription-drug coverage under Medicare Part D.

45. Mr. Cavagnuolo or his Estate has also sustained out-of-pocket expenses for which he was, and it is, entitled to reimbursement.

**Count Two**
(Administrative Procedure Act, 5 U.S.C. § 706(1))
**The Secretary Has Unlawfully Failed To Prevent the
Denial of Coverage of a Medically Required Covered Part D Drug**

46. Mrs. Cavagnuolo incorporates the allegations of paragraphs 1 through 40 here.

47. Under the MMA, the Secretary has a statutory duty to provide access to all "covered Part D drugs."

48. In the case of Mr. Cavagnuolo and his Estate, the Secretary has unreasonably withheld statutorily required determinations and has unlawfully failed to take required actions.

49. The Secretary's failures to make legally required determinations, and to take required actions, damaged Mr. Cavagnuolo and his Estate.

50. As a result of the Secretary's failures, Mr. Cavagnuolo and his Estate have been denied statutory rights to Medicare Part D coverage of his olaparib prescription.

### Count Three
(Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2))
**The Secretary's Actions Are Arbitrary and Capricious in Violation of the APA and the SSA**

51. Mrs. Cavagnuolo incorporates the allegations of paragraphs 1 through 40 here.

52. The actions of the Secretary in denying Part D coverage of Mr. Cavagnuolo's lung-cancer prescription are unlawful and should be set aside for depriving a Medicare beneficiary of statutory rights as provided by the Social Security Act ("SSA").

53. The Secretary's finding that olaparib, as used by Mr. Cavagnuolo, was not a covered Part D drug should be set aside as not in accordance with law, in excess of statutory authority or limitations, short of statutory right, unwarranted by the facts, and arbitrary and capricious.

### Count Four
(Declaratory Judgment)
**There Is No Compendia Requirement in the Medicare Part D Program**

54. Mrs. Cavagnuolo incorporates the allegations of paragraphs 1 through 40 here.

55. On information and belief, the use of olaparib to treat lung cancer is not and was not included, at any relevant time, in any of the compendia (or indexes or other compilations) that Part D plans use under HHS regulations to determine whether a use is a covered Part D drug.

56. Part D coverage was denied here due to the supposed compendia requirement.

57. Therefore a controversy exists between Mrs. Cavagnuolo and the Secretary as to whether there is any compendia requirement in the Medicare Part D statutory scheme.

58. Mrs. Cavagnuolo is entitled to a declaration that there is no compendia requirement in the Medicare Part D program, and that the Secretary's creation of a compendia requirement is unlawful, unauthorized, and an incorrect interpretation of the SSA.

**Prayer for Relief**

WHEREFORE Mrs. Cavagnuolo respectfully requests that this Court enter judgment:

a. Declaring that the SSA does not authorize the Secretary to create any compendia requirement for the Medicare Part D program;

b. Declaring further that a prescription drug need not be prescribed for a "medically accepted indication," as defined by 42 U.S.C. § 1396r-8(k)(6), to be a "covered Part D drug," as defined by 42 U.S.C. § 1395w-102(e);

c. Declaring therefore that olaparib, as prescribed for Mr. Cavagnuolo to treat lung cancer, is or was a "covered Part D drug";

d. Enjoining the Secretary from denying Medicare Part D coverage of Mr. Cavagnuolo's olaparib prescription;

e. Directing the Secretary immediately to ensure that the Medicare Part D program will cover Mrs. Cavagnuolo's claim, on behalf of her late husband's Estate, for reimbursement based on Mr. Cavagnuolo's olaparib prescription;

f. Awarding to the Estate reimbursement of the out-of-pocket expenses caused by the denial here of Part D coverage, together with interest thereon;

   g. Awarding the Estate its, Mr. Cavagnuolo's, or Mrs. Cavagnuolo's costs and expenses incurred or advanced in administrative proceedings and in this action, as well as reasonable attorneys' fees; and

   h. Granting Mrs. Cavagnuolo, on behalf of the Estate, such other and further relief as this Court may deem just and proper.

Dated: New York, New York
   November 9, 2023

                <u>s/ Jeremy C. Bates</u>
                Jeremy C. Bates
                21 West Street Apt. 21J
                New York, New York 10006
                917-626-2473
                jeremybates3@gmail.com
                *Attorney for Plaintiff*
                 *Marlene Cavagnuolo, as*
                 *Executrix of the Estate of*
                 *Joseph T. Cavagnuolo*